IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BENJAMIN W. WARREN,)
)
Plaintiff,)
)
v.) Civil Action No. 15-672
)
CAROLYN W. COLVIN,)
ACTING COMMISSIONER OF)
SOCIAL SECURITY,)
)
Defendant.)

## MEMORANDUM AND ORDER OF COURT

AND NOW, this 9th day of September, 2016, upon due consideration of the parties' cross-motions for summary judgment relating to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for disability insurance benefits and supplemental security income under Titles II and XVI, respectively, of the Social Security Act ("Act"), IT IS ORDERED that plaintiff's motion for summary judgment (Document No. 11) be, and the same hereby is, granted and the Commissioner's motion for summary judgment (Document No. 13) be, and the same hereby is, denied. The Commissioner's decision of November 15, 2013, will be reversed and this case will be remanded to the Commissioner for further proceedings consistent with this opinion pursuant to *sentence 4* of 42 U.S.C. §405(g).

When the Commissioner determines that a claimant is not "disabled" within the meaning of the Act, the findings leading to such a conclusion must be based upon substantial evidence. "Substantial evidence has been defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (citation omitted).

Despite the deference to administrative decisions required by the substantial evidence standard, reviewing courts "'retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner's] decision is not supported by substantial evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (*quoting* Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981)). In evaluating whether substantial evidence supports an ALJ's findings, "'leniency [should] be shown in establishing the claimant's disability, and ... the [Commissioner's] responsibility to rebut it [should] be strictly construed ....'" Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003) (*quoting* Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979)).

Plaintiff protectively filed his pending applications for disability insurance benefits and supplemental security income on January 26, 2012, and April 1, 2012, respectively, both alleging a disability onset date of December 16, 2009,[1] primarily due to left side paralysis, neuropathy and a left ankle condition. Plaintiff's applications were denied initially. At plaintiff's request an ALJ held a hearing on October 18, 2013, at which plaintiff, represented by counsel, appeared and testified. On November 15, 2013, the ALJ issued a decision finding that plaintiff is not disabled. On March 27, 2015, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 36 years old at the time of the ALJ's decision and is classified as a younger person under the regulations. 20 C.F.R. §§404.1563(c) and 416.963(c). He has at least a high school education and has past relevant work experience as a pizza delivery person, but he has not engaged in any substantial gainful activity since his alleged onset date.

---

[1] Because plaintiff had acquired sufficient coverage to remain insured only through December 31, 2013, the relevant time period for purposes of plaintiff's Title II application is the alleged onset date of December 16, 2009, through the date last insured of December 31, 2013, and plaintiff bears the burden of showing he became disabled during that time period.

After reviewing plaintiff's medical records and hearing plaintiff's testimony, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that although plaintiff has the severe impairments of status-post traumatic brain injury, left sided spastic hemiplegia,[2] left extremity neuropathy and paralysis, chronic pain syndrome, arthritis, left shoulder-elbow-wrist-hand contractures,[3] left hand thumb deformity and status-post left hand tendon lengthening and joint manipulation, those impairments, alone or in combination, do not meet or medically equal the criteria of any of the impairments listed at Appendix 1 of 20 C.F.R., Part 404, Subpart P.

The ALJ also found that plaintiff retains the residual functional capacity to engage in work at the sedentary exertional level but with numerous restrictions necessary to accommodate his impairments.[4] Taking into account these restrictions, a vocational expert identified numerous categories of jobs which plaintiff can perform based upon his age, education, work experience and residual functional capacity, including call out operator, machine tender and surveillance system monitor. Relying on the vocational expert's testimony, the ALJ found that although plaintiff cannot perform his past relevant work, he nevertheless is

---

[2] "Hemiplegia" is paralysis of one side of the body. http://www.oed.com

[3] A "contracture" is a condition of persistent contraction and rigidity in the muscles or the joints. http://www.oed.com

[4] Specifically, the ALJ found that plaintiff can perform sedentary work "except he can never climb a ladder, rope, or scaffold; can never crawl; can make no use of his non-dominant hand and arm, but with no dominant limitation; only occasionally push, pull, or operate foot controls with the left lower extremity, but with no right lower extremity limitation: can only occasionally climb ramps and stairs: can only occasionally balance, stoop, kneel, or crouch; will require a sit-stand option, at the work station, with intervals no more frequent than every thirty minutes; and must avoid all exposure to unprotected heights, dangerous machinery, and like workplace hazards." (R. 24-25).

capable of making an adjustment to numerous jobs existing in significant numbers in the national economy. Accordingly, the ALJ concluded that plaintiff is not disabled under the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §§423(d)(2)(A) and §1382c(a)(3)(B).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability.[5] 20 C.F.R. §§404.1520 and 416.920. If the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 540 U.S. 20 (2003).

Here, plaintiff's only challenge is to the ALJ's step 3 finding that plaintiff's impairments caused by his traumatic brain injury do not meet or equal Listing 11.04. Specifically, plaintiff contends that the ALJ erroneously interpreted that listing to require deficits on both the left and right side of his body. Upon review, the court agrees that the ALJ's step 3 finding appears to be based on an erroneous assumption as to the requirements of Listing 11.04. Accordingly, this case will be remanded to the ALJ for additional evaluation.

---

[5] The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether his impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents him from performing his past-relevant work; and, (5) if so, whether the claimant can perform any other work which exists in the national economy, in light of his age, education, work experience, and residual functional capacity. 20 C.F.R. §§404.1520 and 416.920; Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003).

At step 3, the ALJ must determine whether the claimant's impairment matches, or is equivalent to, one of the listed impairments. Burnett v. Commissioner of Social Security Administration, 220 F.3d 112, 119 (3d Cir. 2000). The listings describe impairments that prevent an adult, regardless of age, education, or work experience, from performing any gainful activity. Knepp v. Apfel, 204 F.3d 78, 85 (3d Cir. 2000); 20 C.F.R. §§404.1520(d) and 416.920(d). "If the impairment is equivalent to a listed impairment then [the claimant] is *per se* disabled and no further analysis is necessary." Burnett, 220 F.3d at 119.

The burden is on the ALJ to identify the relevant listed impairment in the federal regulations that compares with the claimant's impairment. Id. at 120 n.2. The ALJ must "fully develop the record and explain his findings at step 3, including an analysis of whether and why [the claimant's] ... impairments ... are or are not equivalent in severity to one of the listed impairments." Id.

Here, the ALJ correctly identified 11.04 as the listing corresponding to plaintiff's impairments arising from his traumatic brain injury.[6] That listing is met when the claimant experiences, more than 3 months post-accident, either "sensory or motor aphasia resulting in ineffective speech or communication" or "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C)."[7]

---

[6] The guidelines for evaluating impairments caused by cerebral trauma arising from a traumatic brain injury are contained in Listing 11.18. *See* 20 C.F.R., subpart P, Appendix 1, §11.00F. Pursuant to Listing 11.18, cerebral trauma is to be evaluated under 11.02, 11.03, 11.04, and 12.02, as applicable. Here, the deficits arising from plaintiff's traumatic brain injury most closely correspond to the criteria of 11.04.

[7] Section 11.00C provides that "persistent disorganization of motor function" may take the form of "paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral, cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combinations" and instructs that "the assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands and arms."

The ALJ found that plaintiff does not meet Listing 11.04 because his "disorganization of motor function affects only his left sided extremities and has not resulted in sustained disturbance of gross and dexterous movements, or gait and station." (R. 24). The only stated rationale behind the ALJ's finding is that plaintiff "has remained largely independent and has engaged in a wide range of activities despite his impairments." (Id.)

The court finds that the ALJ's step 3 analysis in this case fails to withstand substantial evidence scrutiny. First, the ALJ inaccurately seems to suggest that plaintiff does not meet the listing because his disorganization of motor functioning "affects only his *left sided extremities*." As plaintiff aptly points out, however, Listing 11.04 requires only significant and persistent disorganization of motor function in two extremities, and it does not matter if both of those extremities are on the same side of the body. Moreover, the ALJ's analysis also is conclusory and essentially just parrots the language of the remainder of the listing in stating that plaintiff's impairments have not "resulted in sustained disturbance of gross and dexterous movements, or gait and station."

It is indisputable in this case that plaintiff does *not* have significant and persistent disorganization of motor functioning in either of his right extremities. It also is beyond dispute that plaintiff *does* have significant and persistent disorganization of motor functioning in his left upper extremity that results in sustained disturbance in gross and dexterous movements with his left hand. The only questions then are whether he also has such disorganization of motor functioning in his left lower extremity and, if so, whether it results in sustained disturbance of gait and station.

The court simply cannot tell from the ALJ's decision what his answers to those remaining questions were. It is plausible that his step 3 finding incorrectly assumed that

AO 72
(Rev. 8/82)

plaintiff cannot meet Listing 11.04 simply because his disorganization of motor functioning was solely on his left side. It also is plausible that he may have been acknowledging that plaintiff does have such disorganization of motor functioning in <u>both</u> his left upper and left lower extremities, but nevertheless that he does not meet the listing because his lower left extremity disorganization of motor functioning does not result in sustained disturbance in gait or station. This court cannot undertake meaningful judicial review when it cannot decipher which of these two possible findings the ALJ actually was trying to make.

Clarity also cannot be found in the remainder of the ALJ's decision either. For instance, while the ALJ found plaintiff to have the severe impairments of "left-sided spastic hemiplegia and left extremity neuropathy and paralysis," (R. 23), and acknowledged plaintiff's "well-documented history of remote motor vehicle accident and resulting loss of function in his left upper <u>and</u> lower extremities," (R. 25-26), later in the decision he found only that "the evidence does not show that [plaintiff] is unable to perform work that does not involve use of his left arm."

However, there is objective medical evidence indicating that plaintiff's left-sided difficulties were not limited to his left upper extremity. Dr. Ramachandra Tata, the neurologist, diagnosed plaintiff with left spastic hemiplegia and left-*sided* neuropathic pain, and also noted an unsteady gait. (R. 267-69). Dr. Sheila Burick, plaintiff's treating physician, reported left-*sided* weakness. (R. 319). Dr. Kenneth Molinero, an orthopedist, also examined plaintiff and found left-*sided* deficiencies. (R. 348-49).

In <u>Jones v. Barnhart</u>, 364 F.2d 501, 505 (3d Cir. 2004), the court explained that "the function of <u>Burnett</u> is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." Here, the court finds that the ALJ's

explanation of his step 3 finding is inadequate to explain why plaintiff does not meet Listing 11.04. Because the ALJ failed to adequately explain his step 3 finding, that finding is not supported by substantial evidence, and this case must be remanded to the Commissioner for additional explanation.

On remand, the ALJ must make clear findings as to whether plaintiff has significant and persistent disorganization of motor functioning in his left lower extremity. If the ALJ concludes that he does, then he must make a clear finding as to whether that significant and persistent disorganization of motor functioning results in sustained disturbance of gait and station.

Accordingly, for the foregoing reasons, plaintiff's motion for summary judgment will be granted, the Commissioner's motion for summary judgment will be denied, and this case will be remanded to the Commissioner for further proceedings consistent with this opinion.

/s/ Gustave Diamond
Gustave Diamond
United States District Judge

cc: Kenneth R. Hiller, Esq.
Law Offices of Kenneth Hiller PLLC
6000 North Bailey Avenue, Ste. 1A
Amherst, NY 14226

Colin Callahan
Assistant U.S. Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219